IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| MATTHEW HUFF, | : | Case No. 1:24-cv-150 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| CEDAR FAIR, L.P., | : | |
| | : | |
| Defendant. | : | |
| | : | |

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(Doc. 28)**

---

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 28). Plaintiff filed a Response in Opposition (Doc. 29), to which Defendant filed a Reply in Support (Doc. 30). This matter is therefore ripe for the Court's review. For the following reasons, Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED.**

**FACTS**

Plaintiff Matthew Huff was diagnosed with autism and an eye condition known as keratoconus. (Huff Dep., Doc. 22, Pg. ID 78.) Because of his eye condition, Plaintiff used a white cane to navigate and a magnifying glass to read fine print in 2022; after subsequently undergoing eye surgery, Plaintiff now describes his eyesight as "pretty good." (*Id.* at Pg. ID 79.) Defendant Cedar Fair, L.P. operates an amusement park, Kings Island, in Mason, Ohio. (Defendant's Proposed Undisputed Facts, Doc. 28-1, ¶ 5; Plaintiff's Response to Proposed Undisputed Facts, Doc. 29-1, ¶ 5.)

Plaintiff began working at Kings Island in 2020 in the role of Food Service – Beer Pourer. (Huff Dep., Doc. 22, Pg. ID 89-92; *see also* Onboarding Paperwork, Doc. 22, Ex. A, Pg. ID 181-85.) During his onboarding process, Plaintiff filled out paperwork asking if he was able to perform the duties of the job. (Onboarding Paperwork, Doc. 22, Ex. A, Pg. ID 181-85.) The signature page of the form includes a section for the employee to certify that he or she is able perform the essential functions of the position. This certification has two checkboxes: "Without Accommodation," and "With Accommodation (Please list any suggested accommodation(s) in detail on the Accommodations Request Form.)" (*Id.* at Pg. ID 185.) Further, under the signature block is another checkbox that reads, "Please check here if attaching the Accommodations Request Form." (*Id.*) Plaintiff signed the certification, indicating that he was able to perform the essential functions of the position, and then checked "Without Accommodation." (*Id.*) He made no other markings in the other checkboxes. (*Id.*) Plaintiff also never submitted an Accommodation Request Form. (Huff Dep., Doc. 22, Pg. ID 103.)

On May 22, 2022, Plaintiff's area supervisors reported that he had improperly adjusted the carbon dioxide levels himself for the draft beer, which caused the cart to close early. (*See* Memo to File, Doc. 22, Ex. C, Pg. ID 188.) Then, on June 7, 2022, Plaintiff received disciplinary action because he violated Kings Island's harassment policy with comments he made to a female coworker. (*See* Letter of Agreement, Doc. 22, Ex. D, Pg. ID 189.) Plaintiff signed this letter, acknowledging that "violation of this policy could result in immediate disciplinary action, not to exclude termination of employment." (*Id.*) Then, on July 12, 2022, Plaintiff was disciplined for customer tip theft. (Huff Dep., Doc. 22, Pg.

ID 127-30; Associate Counseling Report #1, Doc. 22, Ex. E, Pg. ID 194.) The discipline report notes that Plaintiff violated company policy when he overcharged a guest more than what they had listed on the tip line. (*Id.*) Specifically, although the guest left a tip of $2.00, Plaintiff input $2.77 into the payment system. (*Id.*) The report indicated that, as a result of this policy violation, Kings Island terminated Plaintiff's employment. (*Id.*; *see also* Associate Counseling Report #1, Doc. 22, Ex. E, Pg. ID 194.) Plaintiff testified that he did not know why he entered the incorrect tip amount, but speculated that "[i]t might have been . . . a mistake," and that he "either typed it in wrong or [he] just didn't see it right or . . . it was just being rushed." (Huff Dep., Doc. 22, Pg. ID 139.)

Immediately following his termination, Plaintiff, along with his father, appealed the decision and attended a meeting with Brian Stover, the employee relations manager at Kings Island, who represented Defendant. (Huff Dep., Doc. 22, Pg. ID 136-38; Stover Dep., Doc. 26, Pg. ID 219.) Stover testified that, during the meeting, Plaintiff stated that his error was due to eyesight issues. (Stover Dep., Doc. 26, Pg. ID 270.) Stover then reversed the termination and asked Plaintiff to submit a formal Accommodation Request Form, which is the same form referenced in the paperwork that Plaintiff initially signed during the onboarding process. (*Id.* at Pg. ID 181-85, 270.) Filling out this Accommodation Request Form initiates the interactive process between Defendant and an employee. (*Id.* at Pg. ID 264.) Plaintiff testified that, during the meeting, his dad asked for certain accommodations, like a bigger screen, better lighting, and the ability to input the tip amounts at the end of the day. (Huff Dep., Doc. 22, Pg. ID 141.) Plaintiff also testified that he did not remember if Stover told him he needed to fill out the Accommodation Request

Form, but Plaintiff remembers discussing the form in the meeting and that it "had to be online or something." (*Id.* at Pg. ID 145-46.) However, he does not recall if Stover informed him that filling out the form would require medical documentation and would result in a meeting with human resources. (*Id.* at Pg. ID 147-48.)

Nevertheless, Plaintiff did not fill out an Accommodation Request Form. (Huff Dep., Doc. 22, Pg. ID 149, 159.) Plaintiff did discuss with his supervisors the accommodations he mentioned during his appeal; however, he never received the accommodations discussed. (*Id.* at Pg. ID 149-50.) Instead, Plaintiff used a magnifying glass to read receipts, which he claimed sometimes helped. (*Id.* at Pg. ID 152-53.) Then, on September 30, 2022, Plaintiff received a second disciplinary action for customer tip theft. (*Id.; see also* Associate Counseling Report #2, Doc. 22, Ex. G, Pg. ID 206-08.) This report states that the customer entered $0.00 for a tip, but Plaintiff input $1.00 into the payment system. (*Id.*) Plaintiff testified that he does not remember why he would include a different number than the customer had written, but states that he "would never" intentionally type in a wrong number. (Huff Dep., Doc. 22, Pg. ID 166.) As a result of this action, Plaintiff was again terminated. (*Id.*) Plaintiff claims Defendant would not allow him to appeal this termination, although he requested to do so. (*Id.* at Pg. ID 168-69.)

## PROCEDURAL POSTURE

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), charging Defendant with violating the Americans with Disabilities Act ("ADA") in February 2023. (*See* Compl., Doc. 1, ¶ 15.) On December 21, 2023, the EEOC issued Plaintiff his right to sue letter. (*Id.; see also* Right to Sue Letter, Doc.

4

1-1.) On March 19, 2024, Plaintiff filed his Complaint. (*See* Doc. 1.) Plaintiff brings claims

of disability discrimination in violation of the ADA and Ohio Revised Code § 4112.02(A)

against Defendant. These discrimination claims allege both that Defendant failed to

accommodate Plaintiff's disability, and that Defendant terminated Plaintiff because of his

disability. (*Id.* at ¶¶ 15-25.) Defendant filed the instant Motion for Summary Judgment

on May 12, 2025, which the parties have fully briefed. (*See* Docs. 28, 29, 30.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is

entitled to judgment as a matter of law, the district court shall grant summary judgment.

Fed. R. Civ. P. 56(a). The moving party has the burden to conclusively show that no

genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party

meets that burden, then it becomes the nonmoving party's responsibility to point to

specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986). A court is under no obligation to search the record for genuine issues of

material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996).

Moreover, a "mere scintilla" of evidence in support of the nonmoving party's

position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734

(6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put

forth probative evidence on which a jury could reasonably reach a verdict in that party's

favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party

fails to make the necessary showing for an element on which it has the burden of proof,

then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

At the summary judgment stage, when a plaintiff has not presented any direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework applies. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). Under this framework, a plaintiff faces the initial burden of presenting a prima facie case, which creates a rebuttable presumption of discrimination that requires the defendant "to articulate some legitimate, nondiscriminatory reason for taking the challenged action." *Johnson v. Kroger Co.*, 319 F.3d, 866 (6th Cir. 2003) (quoting *Johnson v. Univ. of Cincinnati,* 215 F.3d 561, 572-73 (6th Cir. 2000)) (cleaned up). Once the defendant satisfies this burden, the plaintiff must prove that the defendant's proffered reason was a "pretext to hide unlawful discrimination." *Id.* (quoting *Johnson,* 215 F.3d at 573) (cleaned up).

In federal court, federal and Ohio discrimination claims are analyzed under the same standards. *Knox v. Neaton Auto Prods. Mfg.,* 375 F.3d 451, 457 (6th Cir. 2004). Accordingly, as Plaintiff brings concurrent claims under both the ADA and Ohio Revised Code § 4112, the Court will consider them together. Defendant asserts that it is entitled to summary judgment on all of Plaintiff's claims. (Motion, Doc. 28, Pg. ID 355.) Defendant first contends that Plaintiff cannot support a prima facie claim for failure to accommodate based on disability because Plaintiff never requested an accommodation within the meaning of the ADA. (*Id.*) And, Defendant argues that Plaintiff has failed to establish a

6

prima facie case of disability discrimination because similarly situated non-disabled employees were treated the same. (*Id.*) The Court will address each argument in turn.

### I.    Plaintiff's Failure to Accommodate Claims

Defendant states that Plaintiff has failed to establish prima facie claims for his failure-to-accommodate causes of action. To establish a prima facie failure-to-accommodate claim, a plaintiff must show: (1) he was disabled within the meaning of the ADA; (2) he was otherwise qualified for the position, either with or without a reasonable accommodation; (3) the defendant knew or had reason to know of the disability; (4) the plaintiff requested an accommodation; and (5) the defendant failed to provide the necessary accommodation. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 560 (6th Cir. 2022). Defendant argues that Plaintiff has failed to demonstrate the fourth and fifth elements. (Motion, Doc. 28, Pg. ID 364-65.) Additionally, Defendant notes that the Sixth Circuit has stated that "when an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be too little, too late." (*Id.* (quoting *Parsons v. Auto Club Group*, 565 F. App'x 446, 449 (6th Cir. 2014)) (cleaned up).) The Court addresses these arguments in turn.

Defendant contends that Plaintiff failed to properly request an accommodation and initiate the interactive process to receive that accommodation. (Motion, Doc. 28, Pg. ID 365-67.) In support of this argument, Defendant points to several Sixth Circuit cases demonstrating that an employer "is not obligated to provide accommodation until the plaintiff [has] provided a proper diagnosis of her disability and requested specific accommodation." (*Id.* at Pg. ID 365 (quoting *Woodie v. Motorola Sols., Inc.*, No. 24-3267,

7

2025 WL 754544, at *2 (6th Cir. Mar. 10, 2025)).) In *Woodie*, Defendant notes, the plaintiff had asked his employer for a reduced travel schedule because of his disability, but the employer had a specific policy for submitting a disability accommodation request. (*Id.* at Pg. ID 366.) The plaintiff knew of the policy but never submitted his formal accommodation request. (*Id.*) The Sixth Circuit concluded that "the plaintiff thus failed to request an accommodation sufficient to start the interactive process." (*Id.* (quoting *Woodie*, 2025 WL 754544, at *2).) Additionally, the Sixth Circuit found the same in two other cases with similar facts. (*Id.; see Wilson v. Ohio Dep't of Mental Health*, No. 23-3994, 2024 WL 3814047 (6th Cir. Aug. 14, 2024); *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020).) In all of these cases, Defendant points out that the court found that the plaintiff had failed to initiate the interactive process by submitting the required paperwork to request an accommodation; thus, the employer had no obligation to provide the accommodation. (*Id.* at Pg. ID 366-67.)

In a similar way, Defendant contends, Plaintiff here failed to initiate the interactive process and cannot maintain a claim for failure to accommodate. (Motion, Doc. 28, Pg. ID 367.) As Defendant notes, Plaintiff requested three accommodations: a larger screen, better lighting, and the ability to input tips later in his shift. (*Id.*) However, Defendant states that Plaintiff did not follow its accommodation policy; as Stover testified, he told Plaintiff to submit the Accommodation Request Form. (*Id.*) And, Plaintiff acknowledged that Stover told him this when he stated, "[Stover] said there was some kind of form you had to fill out online." (*Id.* at Pg. ID 368 (quoting Huff Dep., Doc. 22, Pg. ID 144-46, 148).) Furthermore, Defendant highlights that, before his termination appeal, Plaintiff indicated

8

he did not need an accommodation when he filled out his initial employment paperwork, as he indicated he could perform his job without accommodation. (*Id.* at Pg. ID 368.) Thus, according to Defendant, there is no genuine issue of material fact that Plaintiff (1) was aware of Defendant's policy for requesting an accommodation but (2) failed to properly request an accommodation sufficient to start the interactive process. (*Id.* at Pg. ID 368-69.)

In response, Plaintiff argues that Defendant, in fact, failed to accommodate Plaintiff's verbal requests for accommodation. (Response, Doc. 29, Pg. ID 385-86.) According to Plaintiff, *Woodie* is inapplicable because many of the plaintiff's verbal requests for accommodations were unrelated to his disability and his supervisors repeatedly directed him to fill out the accommodation form. (*Id.*) And, in *Woodie*, the plaintiff acknowledged that he was aware of the company's policy that he had to submit the proper form for accommodation. (*Id.* at Pg. ID 386.) Conversely, Plaintiff argues that both he and his father verbally requested accommodations related to Plaintiff's disability in the meeting with Stover, which "Defendant disputes" were ever made. And, Plaintiff argues that Stover only made "vague mention of a form for accommodations, but never gave them the form, told them where to find the form, or notified them that the form was required before [Defendant] would consider their request. (*Id.*) Furthermore, Plaintiff points out that Stover's testimony is inconsistent about whether and when he hands an employee the accommodation form. (*Id.*) He first stated that he only provides the form if an employee specifically requests one, but then said that he gives the form if an employee requests an accommodation. (*Id.*) To this point, Plaintiff states that both he and his father

9

verbally requested an accommodation, which should have prompted Stover to give them the accommodation form. (*Id.* at Pg. ID 386-87.)

Plaintiff also argues that Defendant never informed him that it does not consider verbal requests; moreover, Defendant cannot point to a policy stating that verbal requests are not honored and that the form was the sole method of making accommodation requests. (Response, Doc. 29, Pg. ID 387.) Finally, Plaintiff contends that he was "not required to use magic words" in order to make a valid request for an accommodation. (*Id.* (quoting *Fisher v. Nissan N. America, Inc.*, 951 F.3d 409, 413 (6th Cir. 2020)) (cleaned up).) Rather, the Sixth Circuit looks to "whether a factfinder could infer that the interaction constituted a request for an accommodation." (*Id.* (quoting *Fisher*, 951 F.3d at 413) (cleaned up).) According to Plaintiff, he "went beyond" what is required by asking for specific accommodations, which should have triggered Defendant's interactive process; such a method for requesting the accommodation is one "widely accepted and in accordance with the EEOC's guidance on the topic." (*Id.* at Pg. ID 387-88.) Indeed, the EEOC states that "requests for reasonable accommodation do not need to be in writing. Individuals may request accommodations in conversation or may use any other mode of communication." (*Id.* (quoting "EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA" (October 17, 2002)).) And, "an employer may ask the individual to fill out a form or submit the request in written form, but the employer cannot ignore the initial request." (*Id.*) Accordingly, Plaintiff argues that Defendant had a duty to engage in the interactive process and failed to do so. (*Id.*)

Addressing Defendant's reliance on *Tchankpa* to show that employers may require documentation before granting accommodation requests, Plaintiff states that such reliance is improper. (Response, Doc. 29, Pg. ID 388-89.) Plaintiff points out that, in *Tchankpa*, the plaintiff requested an accommodation for an injury and the employer asked for medical documentation of his injury, which he failed to provide. (*Id.* (citing *Tchankpa*, 951 F.3d at 812).) The court thus granted summary judgment for the employer. But here, according to Plaintiff, the facts are different, as Defendant never asked Plaintiff for documentation of his disability. (*Id.*) Plaintiff states that he never submitted such documentation because "he didn't know he had to." (*Id.* (cleaned up).) Rather, his and his father's verbal requests "clearly qualify as requests for accommodations and mark the beginning of the interactive process," in which Defendant failed to engage. (*Id.*) Indeed, Plaintiff contends that summary judgment is inappropriate because there is a genuine dispute of material fact that Defendant informed Plaintiff of its requirement that he fill out the Accommodations Request Form. (*Id.* at Pg. ID 390.) Plaintiff claims he was never told this, and Defendant did not engage in the interactive process. (*Id.*) Accordingly, as Plaintiff sees it, Defendant failed to accommodate Plaintiff's disability. (*Id.*)

Defendant, however, disagrees with these characterizations. To start, Defendant takes issue with Plaintiff's claim that *Tchankpa, Woodie,* and *Wilson* are inapposite. (Reply, Doc. 30, Pg. ID 405.) While Plaintiff claims he was never told about the formal request form, unlike the plaintiffs in the above cases, Defendant declares this is "[n]ot so." (*Id.*) In support of this contention, Defendant points to several instances in the record where both Plaintiff and his father admitted that Stover told them about the accommodations request

11

form. (*Id.* (citing Huff Dep., Doc. 22, Pg. ID 144-46, 148; Richard Huff Dep., Doc. 27, Pg. ID 331-32).) Furthermore, Plaintiff admits he duly executed his initial onboarding paperwork which "instructs employees to submit an Accommodations Request Form." (*Id.* at Pg. ID 405-06.) This testimony, according to Defendant, aligns with Stover's testimony where he stated that he instructed Plaintiff to fill out the form once he reversed the termination and Plaintiff asked for accommodations. (*Id.* at Pg. ID 406 (citing Stover Dep., Doc. 26, Pg. ID 270).) Thus, Defendant maintains that there is no dispute that Plaintiff was told he needed to fill out the Accommodation Request Form to start the process. (*Id.*)

Regarding Plaintiff's arguments that the case law Defendant cites is inapposite to his situation, Defendant again disagrees. (Reply, Doc. 30, Pg. ID 408.) Beginning with *Woodie*, Defendant states that "Plaintiff fails to meaningfully distinguish" this case. (*Id.*) Plaintiff claimed that the employee in *Woodie* asked for accommodations unrelated to his disability; in actuality, Defendant points out, the record shows that the plaintiff "on several occasions, asked his supervisors for a reduced travel schedule because of his disability." (*Id.* (quoting *Woodie*, 2025 WL 754544, at *3).) The Sixth Circuit stated that "several of [the plaintiff-employee's] schedule-change requests were tied to his disability." (*Id.* (quoting *Woodie*, 2025 754544, at *3).) And, just like here, the employer in *Woodie* had a policy for submitting a disability accommodation request. (*Id.*) Defendant emphasizes that because the plaintiff was informed of the policy, but never submitted the required paperwork, the Sixth Circuit found that he had failed to request an accommodation sufficient to start the interactive process under the ADA. (*Id.* (citing

12

*Woodie*, 2025 WL 754544, at *3).) As Defendant sees it, there is no material difference between the situation in *Woodie* and Plaintiff's claims here. (*Id.* at Pg. ID 408-09.)

The Court agrees. The record is clear that Plaintiff and his father requested accommodations during their meeting with Stover. (*See* Huff Dep., Doc. 22, Pg. ID 141.) And, as Plaintiff and his father admit, Stover brought up the Accommodations Request Form during the meeting as the proper vehicle with which to request a disability-related accommodation. (Huff Dep., Doc. 22, Pg. ID 144-46, 148; Richard Huff Dep., Doc. 27, Pg. ID 331-32; *see also* Stover Dep., Doc. 26, Pg. ID 270.) The Sixth Circuit affirmed summary judgment in *Woodie* for the same reasons: the plaintiff repeatedly discussed his disability and need for accommodation, was told about the proper request form, but failed to request an accommodation "sufficient to start the interactive process." 2025 WL 754544, at *3.

Furthermore, like here, the plaintiff in *Woodie* attempted to argue that an employer's policy, such as a specific request form, does not vary the standard for what constitutes an accommodation request. 2025 WL 754544, at *3. But the Sixth Circuit was unconvinced by this argument, pointing out that the plaintiff "offer[ed] no case law to support his theory that he could sit on his hands and decline to follow" the company's policy when he was repeatedly directed to do so. *Id.* This Court is similarly unconvinced by Plaintiff's parallel argument. Plaintiff attempts to compare his case to *Fisher*, where the Sixth Circuit found that the plaintiff's repeated proposal for a new job constituted a request for an accommodation under the ADA because a factfinder could construe the requests as accommodations. (*See* Response, Doc. 29, Pg. ID 387-88.) But *Fisher* is not

13

analogous. In *Fisher*, the parties were not disputing whether the plaintiff was required to follow a company policy to formally request an accommodation. 951 F.3d at 419. Instead, the plaintiff asked for a few accommodations, and the employer simply did nothing. *Id.* at Pg. ID 419-20. Here, Plaintiff verbally requested an accommodation and, in response, Stover informed Plaintiff of the steps he needed to take to formalize that request and trigger the interactive process. To apply the holding in *Fisher* to the facts here is a step too far. The issue in *Fisher* was whether Plaintiff's request for his accommodations, without using the words "disability" or "accommodation" should have put the defendant on notice to begin the interactive process under the ADA. The issue here is whether, after learning that Defendant had a formal process for accommodation requests, Plaintiff could fail to follow that policy and still expect Defendant to provide the accommodation. The two situations are not the same.

Further, the Court is similarly unpersuaded by Plaintiff's claims that *Wilson* and *Tchankpa* are inapplicable. While the facts in *Tchankpa* are slightly different, the holding does not change the outcome here. In *Tchankpa*, the plaintiff suffered a workplace injury and, once he submitted his accommodation request, the employer requested additional medical documentation to verify the need for the requested accommodation. 915 F.3d at 812. The Sixth Circuit asserted that an "employee's failure to provide requested medical documentation supporting an accommodation precludes a failure to accommodate claim." 951 F.3d at 812. And, in *Wilson*, the Sixth Circuit reiterated this stance when the plaintiff, who requested an accommodation verbally, was asked to then fill out forms "to describe her requested accommodation and to show physician support for it." *Id.* But, she

14

never did, which "amount[ed] to a voluntary withdrawal that precludes her claim that the Department failed to accommodate her." *Id.* (citing *Tchankpa*, 951 F.3d at 812).

Plaintiff asserts that, unlike in *Wilson*, he was never told about the company's policy for requesting an accommodation. (Response, Doc. 29, Pg. ID 388.) Yet, it is clear from the record that this is simply false. As mentioned above, Stover told both Plaintiff and his father about the form; Plaintiff admitted this. (Huff Dep., Doc. 22, Pg. ID 144-46, 148; Richard Huff Dep., Doc. 27, Pg. ID 331-32; Stover Dep., Doc. 26, Pg. ID 270.) Before that, the onboarding paperwork advised Plaintiff of Defendant's form-based accommodation process. (Huff Dep., Doc. 22, Pg. ID 185.) Nevertheless, Plaintiff did not choose to seek an accommodation through the proper paperwork after stating to Stover that he needed an accommodation. (*Id.*) *Wilson* made clear that an employer is not required to provide a plaintiff with an accommodation immediately after the plaintiff requests one. 2024 WL 3814047, at *3. Rather, the plaintiff must follow the employer's policy; failure to do so amounts to a "withdrawal of the interactive process" and "precludes a failure to accommodate claim." *Id.* at *3-4. Plaintiff's situation is no different from the one in *Wilson*.

Plaintiff claims that whether Stover told him he needed to fill out the accommodations request form is disputed. But, as established, the record is clear that both Plaintiff and his father remember being told about the form and that it "needed to be filled out online." And, Plaintiff testified that he duly executed his initial onboarding paperwork, which again emphasized that, in order to request an accommodation, the employee must attach a completed accommodation form. The Sixth Circuit is explicit that

15

a plaintiff who does not follow an employer's policy for accommodation requests cannot succeed on a failure-to-accommodate claim. *See Woodie*, 2025 WL 754544, at *3; *Tchankpa*, 951 F.3d at 812, *Wilson*, 2024 WL 8714074, at *3.

While Plaintiff is correct that the EEOC does not allow verbal requests to be ignored, Stover did not ignore the verbal request, but directed him to fill out the form, which had to be done online. As stated by a court in this district, "*both* parties must engage [in the informal, interactive accommodation process] in good faith." *Tucker v. Dept. of Veterans Affairs*, No. 1:23-CV-804, 2025 WL 2970152, at *8 (S.D. Ohio Oct. 21, 2025) (quoting *Kleiber v. Honda of Am. Mfg., Inc.* 485 F.3d 862, 871 (6th Cir. 2007)) (granting summary judgment on failure-to-accommodate claim where plaintiff failed to provide the requested documentation as part of the employer's accommodation request process). So, like here, when an employee refuses to participate or withholds essential information, then the employer "is not liable for failing to accommodate." *Id.* (citing *Tchankpa*, 951 F.3d at 812). Thus, assuming that Plaintiff's verbal request constituted a request for accommodation, triggering the interactive process, the outcome is unchanged. His failure to, in good faith, engage in Defendant's interactive process by filling out the online form as Defendant requested caused a breakdown in the interactive process. *See id.*; *see also Kirilenko-Ison v. Board of Educ. of Danville Independent Schools*, 974 F.3d 652 (6th Cir. 2020) There is no genuine issue of material fact here. Plaintiff did not properly engage in Defendant's process for requesting an accommodation; Defendant is entitled to summary judgment on these failure-to-accommodate claims.

## II.     Plaintiff's Disability Discrimination Claims

Looking next to Plaintiff's disability discrimination claims for his termination, Defendant argues that Plaintiff has not shown direct evidence of discrimination, so the *McDonnell-Douglas* burden-shifting framework applies. (Motion, Doc. 28, Pg. ID 369.) This analysis begins with Plaintiff's demonstration of a prima facie case, which requires that Plaintiff show: (1) he is disabled; (2) he is otherwise qualified for the job, with or without a reasonable accommodation; (3) he suffered an adverse employment action; (4) his employer knew or had reason to know of his disability; and (5) similarly situated, non-disabled employees were treated more favorably. *Booker v. Bd. of Educ. Of the Toledo Sch. Dist.*, No. 24-3167, 2024 WL 5440984, at *2 (6th Cir. Dec. 12, 2024). Defendant contends that Plaintiff has failed to establish a prima facie case of discrimination "because similarly-situated, non-disabled employees were not treated more favorably." (Motion, Doc. 28, Pg. ID 369.)

Yet, the Court notes that Plaintiff's argument in response to Defendant's Motion disposes entirely of Defendant's use of the indirect evidence test. (Response, Doc. 29, Pg. ID 391.) Instead, Plaintiff asserts that, because he has established that Defendant failed to accommodate his disability, this failure to accommodate acts as direct evidence of disability discrimination. (*Id.* (citing *Fisher*, 951 F.3d at 416).) Thus, the *McDonnell-Douglas* framework does not apply. (*Id.*) The remainder of Plaintiff's argument relies on this finding of direct evidence and never addresses the arguments Defendant made regarding the indirect evidence test. (*Id.* at Pg. ID 391-94.) While Plaintiff is correct that a failure to accommodate does constitute direct evidence of discrimination, Plaintiff's argument

17

breaks down. As established above, Defendant did not fail to accommodate Plaintiff; rather, Plaintiff failed to request the accommodation properly in the first place. Without an actionable failure-to-accommodate claim, Plaintiff cannot use that claim to show direct evidence of disability discrimination. As Defendant points out, the Sixth Circuit has affirmed summary judgment in similar cases where a plaintiff has relied on direct evidence under a failure-to-accommodate claim, but the plaintiff could not establish the failure-to-accommodate claim. (Reply, Doc. 30, Pg. ID 410 (citing *Brumley v. UPS*, 909 F.3d 834, 839 (6th Cir. 2018)).)

Without any direct evidence, Plaintiff's theory for his disability discrimination claims falls flat. And, Plaintiff does not address Defendant's argument for why Plaintiff has failed to establish a prima facie case under the indirect evidence test. Defendant's argument solely focuses on the fact that Plaintiff has not shown how he was treated differently than similarly situated, nondisabled employees, the final element of a prima facie case. (Motion, Doc. 28, Pg. ID 369.) Plaintiff does not provide any evidence to dispute this argument. (*See generally* Response, Doc. 29.) Without rebutting Defendant's claim that he failed to establish a prima facie case under the *McDonnell-Douglas* framework, Plaintiff has essentially abandoned his disability discrimination claims under this theory altogether. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 261 (6th Cir. 2018) ("When a plaintiff fails to address [a claim] in response to a motion for summary judgment, the claim is deemed waived.") (cleaned up). The Sixth Circuit's "jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS*

18

*of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). Thus, Defendant is also entitled to summary judgment on Plaintiff's disability discrimination claims.

## CONCLUSION

Based on the foregoing reasons, the Court **ORDERS** the following:

1. Defendant's Motion for Summary Judgment (Doc. 28) is **GRANTED**;

2. Summary judgment is **ENTERED** in favor of Defendant on all of Plaintiff's claims; and

3. This case is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND